# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIGID A. FORD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:15-cv-1989-WTL-DML |
| MARION COUNTY SHERIFF'S DEPARTMENT, et al., | ) ) ) ) |
| Defendants. | ) |

## ENTRY ON MOTION TO RECONSIDER RULING ON MOTION FOR SUMMARY JUDGMENT

This case is before the Court on Plaintiff Brigid Ford's motion entitled Motion for Relief Under Rule 60 (Dkt. No. 164). The motion is not properly brought under Federal Rule of Civil Procedure Rule 60, as no final judgment has been issued in this case and

> Rule 60(b) provides that district courts "may relieve a party or its legal representative from a *final* judgment, order, or proceeding" for the enumerated reasons. Fed.R.Civ.P. 60(b) (emphasis added). Thus the rule "applies only to 'a final judgment, order, or proceeding.'" 11 Charles Alan Wright, *et al., Federal Practice and Procedure Civil* § 2852 (3d ed. 1998).

*Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) (emphasis in original). The Court will treat Ford's motion as a motion to reconsider its summary judgment ruling pursuant to the Court's "discretion to reconsider an interlocutory judgment or order at any time prior to final judgment." *Id.* (citations omitted). In that context, "'[a] judge may reexamine his earlier ruling . . . if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it.'" *HK Sys., Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009) (quoting *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir. 1995)).

Considering the latter factor first, reconsidering the summary judgment ruling at this point in the litigation would "cause undue harm" to the Defendants in this case. The motion to reconsider was filed less than two weeks prior to the final pretrial conference in this case and after the Defendants had made their pretrial filings. The summary judgment ruling in question was entered almost four months ago, and yet Ford waited until now to file the motion to reconsider, at a time when the Defendants' trial preparation would be disrupted by the briefing of the motion. This case already has been pending for more than two years, and the Court does not find it to be in the interests of justice to continue the trial date simply because Ford decided to file a last-minute motion to reconsider. Accordingly, the Court denies the motion to reconsider on the grounds that Ford unreasonably delayed filing it and that delay is prejudicial to the Defendants.

In addition, the Court finds that the motion fails to support "a conviction at once strong and reasonable that the earlier ruling was wrong." Thus, for the reasons set forth below, even in the absence of Ford's dilatoriness, the motion would be denied.

First, Ford, citing *McKinney v. Office of the Sheriff*, 866 F.3d 803, 814 (7th Cir. 2017), notes that "[t]he briefing on Defendants' Motion for Summary Judgment was fully completed before a recent decision in the Seventh Circuit relating to the merits of self-serving testimony." Dkt No. 164 at 4. But as the opinion in *McKinney* notes, it broke no new ground on that issue:

> Our cases for at least the past fifteen years teach that "Self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014) (citations omitted). We have tried often to correct "the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); see especially *Hill v. Tangherlini*, 724 F.3d 965, 967 & n.1 (7th Cir. 2013) (overruling earlier cases indicating "self-serving" evidence could not be used to show genuine dispute of fact) ("Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. As we have repeatedly emphasized over the past

2

decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.") (citations omitted).

*McKinney*, 866 F.3d at 814. The Court therefore is at a loss to understand the relevance of *McKinney* being decided after the summary judgment motion was briefed.

Next, Ford points to a series of footnotes which she says demonstrate that the Court ignored evidence that she cited in opposition to the summary judgment motion. Each of the footnotes in question involves a statement in Ford's statement of facts that the Court found was not supported by the evidence cited by Ford. Therefore, instead of accepting Ford's characterization of the cited evidence, the Court considered the evidence itself. For example, footnote ten of the summary judgment entry reads as follows:

> In her statement of facts, Ford states that "[t]rue to Ford's fears, Ladd consistently and repeatedly made negative, insulting remarks *about Ford's disability*" and "Watts also joined Ladd in daily harassing Ford *about her disability*." Dkt. No. 133-1 at 16, 17. The evidence cited to supports the proposition that Ford was subjected to daily harassment from Ladd and Watts, but it does not support the assertion that the daily harassment was about Ford's disability. *See* Ford's Declaration, Dkt. No. 75-14 at ¶ 12 ("Ms. Watts joined Ms. Ladd in harassing me daily."); Ford's deposition testimony at 136, Dkt. No. 75-8 at 14 (testifying that Ladd harassed her on a "frequent and ongoing" basis); Walterman deposition at 29, Dkt. No. 75-13 at 4 (simply stating that he received "complaints or grievances" from Ford about Ladd, Watts, and Hendricks without characterizing their nature or frequency); Plaintiff's Designation of Evidence 36-50, Dkt. Nos. 71-4 through 71-18 (each of which is summarized in the Court's fact section).

Dkt. No. 135 at 10 n.10. The footnote focused on Ford's statement in her statement of facts that she was subjected to *daily* harassment *based on her disability* from both Ladd and Watts. The deposition testimony cited by the Plaintiff in the instant motion simply does not support such a finding. First, the question Ford was answering asked about "issues" she had with Ladd, and, indeed, the specific issue about which Ford had been asked immediately prior to the quoted question and answer did not have anything to do with Ford's disability, but rather related to

3

Ford's reporting of Ladd's violation of unrelated work policies. Dkt. No. 75-8 at 14. Second, Ford's testimony at that time was not that she was harassed "daily"; indeed, she was unable to answer whether the harassment occurred hourly, weekly, or monthly, saying "I couldn't tell you exactly how many times or how often, but it was frequent." *Id.* The Court did not ignore the evidence presented by Ford regarding the harassment she experienced; rather, the Court declined to accept Ford's characterization of that evidence in her statement of facts when that characterization was not supported by the cited evidence. And, in any event, based on the actual cited evidence, the Court *denied* the motion for summary judgment regarding the issue of whether Ladd and Watts created a hostile work environment.

Similarly, Ford complains about footnote eleven in the summary judgment ruling, which reads:

> In her statement of facts, Ford cites to this email as evidence that "Ford informed Walterman that Ladd *often* commented to Ford that she "was tired of these people who pretend they are disabled just so that they can get special treatment." Dkt. No. 133-1 at 17 (emphasis added). This email discusses only one instance of Ladd making that particular comment, and not to Ford, but to someone on the phone; in fact, Ford stated in the email that "she may have been talking about someone else but given the comments that she has made before and her continuing (though intermittent) use of the speaker phone when we are making appointments I can't help but take these comments personally." Dkt. No. 71-5.

The Court disagrees with Ford's argument that the quoted reference to "comments that she has made before" supports the quoted statement of fact, which refers to a particular comment being made often. The Court also has considered Ford's arguments about footnotes seven, eight, and nine and finds them similarly unavailing.

Next, Ford argues that the Court erred in denying her motion to strike the testimony of Dr. Moffatt as undisclosed expert testimony. As the Court explained in its summary judgment ruling, Dr. Moffatt's testimony was relevant on summary judgment only as far as he set forth

4

what he reported to the Defendants regarding Ford. Whether his medical opinions contained in those reports were accurate simply was not relevant to the summary judgment ruling; what was relevant is that he made the reports. As explained in the Court's summary judgment ruling, testimony that Dr. Moffatt conducted a review and made a report is simply not expert testimony. *See* Dkt. No. 135 at 13 n.12.

Ford's arguments regarding the Defendants' failure to assign her to a civilian warrants position or a dispatcher position were all considered by the Court in making its original ruling. Ford has presented no reason for the Court to change that ruling. The same is true with regard to Ford's arguments regarding the Defendants' failure to choose Ford for promotions for which she applied. Ford cannot defeat summary judgment simply by pointing to general evidence of animus against persons with disabilities by various employees of the Defendant (*see* Dkt. No. 164 at 22-25); rather, she must point to evidence from which a reasonable jury could determine that she suffered an adverse action as a result of that animus (or otherwise because of her disability). The Court's summary judgment ruling sets forth several ways in which the evidence cited by Ford in response to the motion for summary judgment fell short in that regard.

Next, Ford argues that the visitation clerk position was not a reasonable accommodation because she was subjected to harassment in that position. This argument improperly conflates Ford's failure to accommodate claim with her harassment claim.

Finally, Ford argues that the Court ignored evidence of harassment by Hendricks prior to June 2016. The Court did not find that no such harassment occurred, however; rather, as Ford acknowledges, the Court found that Ford did not point to evidence that showed that Ford "'put the Defendants on notice that Ford perceived Hendricks' actions as harassment based on her disability'" prior to that date as required for the Defendants to be held liable for harassment.

5

Dkt. No. 164 at 25 (quoting Dkt. No. 135 at 41). In the instant motion, Ford points to her June 2015 complaint about various behavior by Hendricks. That complaint, which the Court quoted in its summary judgment ruling, does not mention disability or any comments or actions that appear to relate to Ford's disability. *See* Dkt. No. 135 at 19-20.

As explained above, Ford unreasonably delayed filing her motion to reconsider. In addition, Ford has not provided the Court with any reason to reconsider its summary judgment ruling. Accordingly, the motion to reconsider is **DENIED**.

SO ORDERED: 1/16/18

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification