**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **BRIGID A. FORD,** | ) |
| | ) |
|   **Plaintiff,** | ) |
| | ) |
|     **vs.** | ) **Cause No. 1:15-cv-1989-WTL-DML** |
| | ) |
| **MARION COUNTY SHERIFF'S** | ) |
| **DEPARTMENT,** | ) |
| | ) |
|   **Defendant.** | ) |

## ENTRY ON BILL OF COSTS

This cause is before Court on the Defendant's Bill of Costs (Dkt. No. 229). The Plaintiff

has filed a timely objection to the Defendant's request for costs, and the Defendant has filed a

reply in support of it. The Plaintiff's unopposed motion for leave to file a surreply in opposition

to the motion is **GRANTED**, and the Clerk is directed to file the surreply, found at Dkt. No. 241-

1, as of the date of this Entry. The Court, being duly advised, now rules as follows.

## I.  APPLICABLE STANDARD

The awarding of costs is governed by Federal Rule of Civil Procedure 54(d), which

provides that "unless a federal statute, these rules, or a court order provides otherwise, costs—

other than attorney's fees—should be allowed to the prevailing party." The categories of costs

that may be awarded are limited to those enumerated by statute:

(1)    Fees of the clerk and marshal;
(2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)    Fees and disbursements for printing and witnesses;
(4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)    Docket fees under section 1923 of this title;

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  "[T]here is a heavy presumption in favor of awarding costs to the prevailing party."  *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000).  "Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable."  *Id.*  The "party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable."  *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.,* 570 F.3d 890, 906 (7th Cir. 2009).

That said, the Bill of Costs form used by the Defendant (and preferred by the Court, *see* Local Rule 54-1(b)), AO Form 133, requires counsel for the party seeking costs to certify under penalty of perjury that the costs listed are "correct and were necessarily incurred in this action." The opposing party then has the opportunity to dispute the reasonableness or necessity of particular items, at which point the moving party must respond to those arguments to sustain its burden of demonstrating that awarding the particular item is appropriate.  In the absence of any argument from the opposing party regarding a particular item, however, the party seeking costs need only complete AO Form 133 and provide the relevant invoices in order to satisfy its burden. Therefore, the Plaintiff's general statements in her response brief that the Defendant has failed to show the necessity of various items are unavailing if they are not accompanied by a specific argument that the items were not necessary and/or reasonable.

## II. **DISCUSSION**

In its Bill of Costs, the Defendant seeks costs in the amount of $13,791.97.  In response to the Plaintiff's objection, the Defendant amended its request to $7,640.76, agreeing that some

of the costs it sought for its expert witnesses are not recoverable.  Several disputes remain

regarding the amended bill of costs, each of which is addressed, in turn, below.

### A.  Copies of Medical Records

The Plaintiff first argues that the Defendant is not entitled to recover the cost of obtaining

copies of certain of the Plaintiff's medical records from her medical providers because the

Plaintiff produced them herself during the course of discovery.  This argument is without merit;

the Defendant was entitled to obtain the records directly from the provider in order to ensure that

they were complete.  The Plaintiff also argues that the medical records at issue—those regarding

her treatment between April 2012, the date of the automobile accident that led to her disability,

and May 2013, when she underwent a fitness for duty exam—are not relevant because the

Defendant ultimately did not contest the fact that she was disabled.  However, the Plaintiff

herself listed "[a]ny and all documents relating to medical records and medical expenses related

to [her] disabilities" on her preliminary and final exhibit lists, *see* Dkt. Nos. 27 & 60, and both

parties included some of the 2012 medical records on their trial exhibit lists, *see* Dkt. Nos. 152 &

183.  At the time the Defendant obtained the records, they were reasonably necessary to the

Defendant's litigation of this case.  *Cf. Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455

(7th Cir. 1998) ("The proper inquiry is whether the deposition was 'reasonably necessary' to the

case at the time it was taken, not whether it was used in a motion or in court.").  The same is true

with regard to the medical records relating to the Plaintiff's mold allergy; while the Plaintiff

eventually abandoned her claim relating to her exposure to mold, it was reasonable and

necessary for the Defendant to obtain records relevant to that claim prior to its abandonment.

Accordingly, the Court finds that the Defendant is entitled to recover the cost of obtaining the

Plaintiff's medical records in the amount of $300.79 as set forth on its Bill of Costs.

## B.  Hayes Deposition Transcript

Next, the Plaintiff argues that the cost of the deposition transcript for McKenzie Hayes should be excluded because—as the Plaintiff argued in objecting to her inclusion on the Defendant's trial witness list—Hayes had no relevant information, given that she worked with the Plaintiff well outside of the relevant time period.  The Court agrees that Hayes' testimony was not necessary for the Defendant's preparation of the case, and while it is true that the Plaintiff chose to depose Hayes, that was necessitated by the Defendant's insistence on including Hayes on its trial witness list.  Accordingly, the Court finds that the $248.00 sought by the Defendant for the Hayes transcript is not recoverable.

## C.  Hale Deposition Transcript

Next, the Plaintiff argues that the Defendant is not entitled to recover its costs for the deposition transcript of Dr. Hale, one of the Defendant's experts, because the Plaintiff's motion to exclude Dr. Hale's testimony was granted by the Court before trial.  While costs for the transcript of an excluded expert's deposition are not per se unrecoverable, in this case the question of whether Dr. Hale's expert testimony should be excluded was not a close one, and the Defendant failed to respond to the Plaintiff's argument regarding the Dr. Hale transcript in its reply brief.  Accordingly, the Court finds that the $510.75 sought by the Defendant for that transcript is not recoverable as costs in this case.

## D.  Expenses Relating to Dr. Gots

Next, the Plaintiff argues that the Defendant is not entitled to recover its costs for the deposition transcript of another of its experts, Dr. Gots.  Dr. Gots' proffered testimony was relevant to the Plaintiff's claim in her Amended Complaint that the Plaintiff was "forced to work in an environment to which she is allergic" due to mold.  Specifically, the Plaintiff alleged that

there was mold in her workspace, that she is allergic to mold, that the Defendant's own physician

diagnosed her with acute pharyngitis and recommended that she be permanently moved to a

different office, but that after she was temporarily moved, she was required to move back and

"continued to be sick from her working environment."  Dkt. No. 33 ¶¶ 69-72.  Dr. Gots, a

toxicologist, opined that "[t]here is no objective evidence in this file of either an allergic

response by [the Plaintiff] or any contamination in her workplace."   Dkt. No. 134-1 at 3.

The Plaintiff moved to exclude Dr. Gots' testimony prior to trial; however, that motion

was rendered moot by the Plaintiff's abandonment of her mold-related claim.  Specifically, the

Defendant asserted the following in the Statement of Material Facts in Dispute in its motion for

summary judgment:

> In November 2015, Ford reported that she had an allergic reaction to mold in the
> workplace.  The MCSO investigated this report and tested Ford's work area for
> mold.  During this time, the MCSO accommodated Ford by allowing her to
> temporarily work in the inmate records department.  The test revealed that the air
> quality was fine in Ford's work environment.  Ford then returned to her work in
> the visitation department.

Dkt. No. 48 at 12.  The Plaintiff asserted no claim relating to mold in her response to that

motion.  Therefore, no such claim survived the Defendant's summary judgment motion.

The Plaintiff first argues that Dr. Gots' deposition was unnecessary because the

Defendant "never contested that [the Plaintiff] had a disability."  Dkt. No. 230 at 13.  This

argument is nonsensical, as Dr. Gots' proffered expert opinion was not relevant to whether the

Plaintiff had the disabilities that were eventually stipulated to by the parties—disabilities that

resulted from injuries she sustained in an automobile accident, which she identified in her

Amended Complaint as "permanent, restricted use of her right hand, her dominant hand, because

of nerve damage" which led to "Reflex Sympathetic Dystrophy('RSD') or Complex Regional

Pain Syndrome ('CRPS')," Dkt. No. 33 ¶ 27—but rather to her claim that her work environment

contained mold that made her sick and the Defendant failed to accommodate her need for a different work station based on *that* condition.

The Plaintiff also argues that Dr. Gots, like Dr. Hale, offered unreliable expert testimony and therefore the costs related to his deposition should be excluded from the award of costs. However, Dr. Gots' deposition was taken by the Plaintiff in July 2017, which was after the Plaintiff filed her response to the Defendant's motion for summary judgment in which she implicitly abandoned her mold-related claim. Therefore, the Plaintiff chose to depose an expert whose opinion was not relevant to any claim that she was asserting in the case at the time. The Plaintiff could have avoided the cost of the deposition—and, indeed, the Defendant's expense of obtaining Dr. Gots' report—by formally acknowledging that the mold-related claims in her Amended Complaint were not relevant to any claim she actually intended to pursue. Because she failed to do so, and instead chose to depose Dr. Gots, the Plaintiff is responsible for the reasonable costs of Dr. Gots' deposition.[1]

### E.  Drs. Buschbacher and Rettig

Next, the Plaintiff argues that the Defendant is not entitled to recover its costs for the deposition transcripts of two of the Plaintiff's treating physicians, Dr. Buschbacher and Dr. Rettig, because the Defendant stipulated that the Plaintiff had a disability and challenged the need for the testimony of these two doctors at trial on that basis. This argument is wholly without merit. Dr. Rettig's testimony was used at trial, and Dr. Buschbacher appeared on the

---

[1]The Plaintiff also argues in her surreply that the amount charged by Dr. Gots for his preparation time was unreasonable because it was more than the Plaintiff's own expert charged, but that argument is forfeited because the Plaintiff failed to raise it in her original objection to the Bill of Costs. In any event, the mere fact that the Plaintiff's expert did not bill for preparation time and charged a lower hourly rate does not demonstrate that the amount charged by Dr. Gots is outside of the range of reasonable.

Plaintiff's witness lists, up to and including the August 17, 2018, list that the Court instructed

should only include those witnesses that the Plaintiff "actually intend[ed] to use at trial."  Dkt.

No. 198 at 2.  The depositions of these witnesses were necessary at the time they were taken.

### F.  Dr. Duplantier

Next, the Plaintiff argues that the Defendant should not recover any costs for the

deposition of Dr. Duplantier, one of the Plaintiff's experts, because defense counsel "falsely

represented to counsel for Ms. Ford that there was no invoice for Dr. Duplantier on August 8,

2018."  Dkt. No. 230 at 17.  This misrepresentation, the Plaintiff argues, constitutes bad faith that

should result in excluding Dr. Duplantier's fee from the costs recovered by the Defendant.  In

order for defense counsel's mistaken representation to be bad faith, it would have to have been

made intentionally for some improper purpose.  Defense counsel represents that it was simply a

mistake, and the Court sees no reason to disbelieve that representation, especially in light of the

fact that the Court cannot imagine what defense counsel would have had to gain by intentionally

misrepresenting that particular fact.  Accordingly, the Defendant is entitled to recover the $40

attendance fee for Dr. Duplantier.

### G.  Bond Requirement

Finally, in her response brief the Plaintiff "requests that the Court set a supersedeas bond

under Fed.R.Civ.P. 62(d) at the 'usual[] cost[]' of 'one percent of the amount secured.'" Dkt. No.

230 at 3 (quoting *N. Ind. Pub. Serv. Co. v. Carbon Cty. Coal Co.*, 799 F.2d 265, 281 (7th Cir.

1986)) (other citations omitted).  The Plaintiff has conflated the cost of obtaining a bond with the

amount of the bond.  The Court sets the latter; the former is set by the bond company from which

the bond is obtained.  In her surreply, the Plaintiff asks that the Court stay execution of the award

of costs without requiring a bond, citing *Lightfoot v. Walker*, 797 F.2d 505, 506 (7th Cir. 1986),

for the proposition that the Court has the discretion to stay the execution of a judgment pending

appeal without requiring a bond.  However, the current version of Federal Rule of Civil

Procedure 62(b) expressly provides that "a party may obtain a stay by providing a bond *or other*

*security*."  The Plaintiff offers no other security, but rather argues that "[t]he requirement of a

bond would make no sense here, where Ms. Ford is still employed by MCSD.  MCSD already

has full access to Ms. Ford's paycheck."  Dkt. No. 241-1 at 9.  The Plaintiff is under no

obligation to remain employed by the Defendant throughout the pendency of the appeal in this

case, however.  Further, the Plaintiff offers no reason why it is unduly burdensome or otherwise

unjust to require the Plaintiff to obtain a bond in this case.

### III.  CONCLUSION

For the reasons set forth above, the Defendant's request for costs, as amended, is

**GRANTED IN PART**.  The Defendant is awarded costs in the amount of $6,882.01,[2] which are

included in the judgment pursuant to 28 U.S.C. § 1920.

SO ORDERED: 4/9/2019

_William T Lawrence_
Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[2]This amount was arrived at by subtracting the amounts excluded above ($248 and $510.75) from $7,640.76, the amended amount sought by the Defendant.

8